**UNITED STATES of America**

v.

**George E. ROSS, Jr.**

**Crim. No. 867–66.**

United States District Court

District of Columbia.

Oct. 7, 1966.

Joel D. Blackwell, Asst. U. S. Atty., for plaintiff.

Karl G. Feissner, Washington, D. C., for defendant.

## MEMORANDUM OPINION

SIRICA, District Judge.

In this first-degree murder case, two defense motions which were argued before me on September 16, 1966, were taken under advisement. This opinion deals with defendant's request for an order requiring the government to produce, for inspection and copying by the defense, the general complaint files of the Metropolitan Police Department relating to this case. Specifically, the defendant wants access to Police Department Forms 252 and 163. Defense counsel has acknowledged in his affidavit attached to

this motion that he has already been given access to Form 251.

On the basis of oral argument and upon consideration of the authorities cited, the Court, on September 27, 1966, ordered production of Forms 251, 252 and 163 for an *in camera* inspection in order to be better informed as to the nature of the information sought by defense counsel.

On September 28, 1966, in response to this order, the Court was furnished the following documents by the Assistant United States Attorney:

(1) An undated original of Form 251 consisting of two pages;

(2) An original of Form 252 consisting of one page and dated May 2, 1966;

(3) A copy of a second Form 252 consisting of one page and dated May 19, 1966;

(4) A carbon copy of a four-page typewritten document entitled "Resume," the first page of which is dated April 4, 1966, the second page of which is undated, and the final two pages of which are dated April 25, 1966. At the end of this four-page "Resume" appears the name "Det. Robert M. Boyd."

After the Court ordered the production of these documents for an *in camera* inspection, the government conceded that it no longer objected to inspection of the Forms 252 by the defense. The government also conceded that there has never been a Form 163 in this case since the usual practice of the Police Department in homicide cases is to prepare a "Resume" rather than a Form 163.

Consequently, in view of the fact that defense counsel has had no difficulty in gaining access to Form 251, that the government will now grant access to the defense for inspecting and copying the 252 Forms, and that there has never been a Form 163 in this case, the only matter left for consideration is the "Resume."

The defendant bases his motion upon two statutes requiring the Police Department to keep certain records [1] and to make them available for public inspection.[2] The latter statute also provides that the necessity for keeping these records open to public inspection shall be enforceable by mandatory injunction issuing from this Court on the application of any person.

The problem raised by this motion, however, goes beyond the requirements of these statutes. The question for decision now is whether the "Resume," or any part of it, comes within the scope of the statutory language.

■ The scope of the statutory language is narrow. Section 134, which defines the nature of the records to be kept by the Police Department, speaks in terms of "general complaint files" and "arrest books." The first subsection of Section 134 requires the Police Department to keep

general complaint files, in which shall be entered every complaint preferred upon personal knowledge of the circumstances thereof, with the name and residence of the complainant.

This subsection does not compel the conclusion that the "Resume" should be made available to the defendant. First, the "Resume" in no way approximates a summary of a complainant's knowledge of the matters charged, and second, this being a homicide case, there is no "complainant" in the usual sense of that term. A complainant (or complaining witness) is generally understood to be the victim of the crime charged, such as the victim of a robbery, the owner of a stolen automobile, etc. In this case involving a homicide, however, the victim of the crime charged is deceased. Consequently, literal compliance with this requirement by the police in this case is impossible.

■ The only reasonable interpretation of Section 134(1) in the context of a homicide case would be to require the

1. District of Columbia Code, Title 4, Section 134.

2. District of Columbia Code, Title 4, Section 135.

police to record similar information with respect to the person who notifies the police that the crime may have been committed. Although the person who first contacts the police is not a complainant in the usual sense, the statute would nevertheless require the police to record the identity and residence of the person notifying them and of the circumstances under which the "informant" acquired such knowledge.

Since it appears from the files and records in this case, particularly Form 251 which has already been disclosed, that the defense already knows the identity and residence of the "informant" in this case, the contents of the "Resume" need not be disclosed in order to satisfy the requirements of Section 134 (1).

■ The only other relevant portion of the statute, subsection (4), requires the Metropolitan Police Department to keep

> arrest books, which shall contain the following information:
>
> (a) Case number, date of arrest, and time of recording arrest in arrest book;
>
> (b) Name, address, date of birth, color, birthplace, occupation, and marital status of person arrested;
>
> (c) Offense with which person arrested was charged and place where person was arrested;
>
> (d) Name and address of complainant;
>
> (e) Name of arresting officer; and
>
> (f) Disposition of case.

It is difficult to conclude that the "Resume," or any part of it, comes within the meaning of this subsection relating to "arrest books." In the event any of the items enumerated by the statute were not recorded in the arrest books as required, it does not follow that the contents of the "Resume" should be disclosed to remedy such deficiency. That such be done is not the purpose of the statute.

■ When Section 134 was amended in 1954 [3] to add subsection (4), the purpose of the addition was merely to insure that

> the keeping of such records and their availability to the public should be matters of law and not of administrative discretion, both for the protection of the public against secret arrests and to guard against the abuse in any way of the arrest power.[4]

No purpose, other than that just quoted from the Senate and House Reports, can even be inferred. Further, the opinions cited by the defendant and relied upon as authority [5] become inapplicable when, as in this case, Forms 251 and 252 are available and no Form 163 ever existed.

Since the arrest books together with Forms 251 and 252 are open, and since no other materials have been brought to the Court's attention as constituting part of the "complaint file" made in this case, the statutory requirements have been met and further opening of police records will be denied. The materials previously furnished to the Court for *in camera* inspection will be returned to the Assistant United States Attorney. Counsel for the government will submit an appropriate order.

---

3. 68 Stat. 755 (August 20, 1954).

4. S.Rep. No. 1775, 83d Cong., 2d Sess. (July 9, 1954); H.R.Rep. No. 2332, 83d Cong., 2d Sess. (July 20, 1954).

5. See the unreported opinion and order in United States v. Moore, Crim. No. 885–63, D.D.C., Oct. 30, 1963 (order of Chief Judge McGuire directing that Forms 163, 251 and 252 be exhibited to defense counsel). See also United States v. Scales, Crim. No. 536–62, D.D.C., Aug. 13, 1962 (memorandum opinion of Judge Tamm whereby a mandatory injunction was granted permitting defense counsel access "to the entire offense report and immediately related documents which constitute the complaint file made in this case"). Neither Moore nor Scales involved a homicide charge.